**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Michael BAKER,**
**Defendant-Appellant.**

**No. 78–1883.**

United States Court of Appeals,
Ninth Circuit.

Jan. 18, 1979.

John C. Emerson, Special Atty., U. S. Dept. of Justice, San Francisco, Cal., for plaintiff-appellee.

Daniel A. Bacon, Fresno, Cal., for defendant-appellant.

Before BROWNING and CHOY, Circuit Judges, and CHRISTENSEN,* District Judge.

PER CURIAM:

James Michael Baker whose appeal is before us, was convicted with five other defendants in a bench trial before the district court of conducting an illegal gambling business in violation of 18 U.S.C. § 1955.[1] Vital to Baker's conviction were taps by federal agents of telephone lines which were used by the various defendants in connection with their gambling operations.

Overriding the question of the sufficiency of the evidence, also presented by Baker here, is his contention that issuance by the district court of the order authorizing the interceptions, and consequentially the admission into evidence of the overheard conversations, constituted error by reason of alleged failure of the supporting affidavits "to set forth facts adequately showing why for each separate wiretap traditional investigative techniques had been attempted, had failed, or were unlikely to succeed."[2]

It is beyond question that without the electronic interception of Baker's conversations the government's case against him would have failed. It is not so clear that the elimination of the fruits of any other one of the remaining three taps authorized by the same order upon the basis of the same affidavits, would have had similar effect. The significance, if any, of such differentiation is not addressed in the briefs, nor is the differentiation itself.

■ Short of the latter refinement which we have determined to be insignificant in this case for reasons later appearing, Baker's counsel earnestly relies upon language found in *United States v. Abascal,* 564 F.2d 821 (9th Cir. 1977), *cert. denied,* 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978),[3]

---

* The Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

1. An "illegal gambling business" as defined by the statute is one which is a violation of the law of a State or political subdivision in which it is conducted, involves five or more persons who conduct, finance, manage, supervise, direct or own all or part of such business, and has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

2. The Omnibus Crime Control and Safe Streets Act of 1968, § 2518(1)(c), in part provides that each application for an order authorizing or approving the interception of a wire or oral communication shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."

3. The wiretap statute requires that § 2518(1)(c) be satisfied with regard to each separate wiretap. Thus a showing of need for the Batchelder wiretap would not necessarily justify the need for the Petroff wiretap. It is not enough that the agents believe the telephone subscribers they wish to tap are all part of one conspiracy. Less intrusive investigative procedures may succeed with one putative participant while they may not succeed with another. . . .

564 F.2d at p. 826.

See also *United States v. Santora,* 583 F.2d 453, 466 (9th Cir. 1978), which recognized that an initial intercept order was sufficiently specific to meet standards applied in other 9th Circuit cases but that "this does not mean that once the Government has established the inadequacy of investigative alternatives relating to certain subjects, it may then dispense with the required showing when applying to tap the telephone of other conspirators."

for insistence that interception of Baker's conversation by means of one of the taps was invalid because all of them were not adequately supported by the affidavits upon which the court's order was based.

## I.

### VALIDITY OF THE WIRETAPS

■ It would be a gratuitous retracing of lines already drawn by numerous decisions of this court,[4] and a blinking out of the narrowness of appellant's attack, to discuss in detail the considerations leading us to conclude that the foundation affidavit[5] generally is adequate to support the district court's order. It was not comprised of mere "boilerplate", conclusionary language, circumstances that would apply to problems that could be expected in the investigation of ordinary gambling cases, the stretching of a single investigative episode into "a full and complete statement", or undue reliance upon the investigator's experience in other cases. It "etched the nature and contours" of this particular gambling business from the statements of reliable informants who had firsthand knowledge but who were afraid and would refuse to testify in court, as well as "the nature and extent of this investigation up to the requesting point with enough particularity to allow a judge reasonably to ascertain that continued use of ordinary surveillance probably would be fruitless." *United States v. Abascal,* 564 F.2d 821, 826 (9th Cir. 1977), *supra,* citing *United States v. Spagnuolo,* 549 F.2d 705 (9th Cir. 1977), *supra.*

■ Baker is in no position to complain because the affidavit on which the intercept order was based did not demonstrate as to himself particularly that traditional investigative techniques had been attempted and failed or were unlikely to succeed. Before the wiretap of the Judd telephone was accomplished, Baker's participation in the illegal gambling business being investigated was not known so far as the record discloses. The foundation affidavit named as suspects the other five defendants "and others yet unknown". The government is not required to identify an individual in a wiretap authorization application unless it has probable cause to believe that the individual is engaged in criminal activity under investigation and that the individual's conversation will be intercepted over the target telephone. 28 U.S.C. § 2518(1)(b)(iv). *United States v. Alfonso,* 552 F.2d 605, 613–615 (9th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977). Cf. *United States v. Scully,* 546 F.2d 255, 259 (9th Cir. 1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1168, 50 L.Ed.2d 578 (1977) *supra.*

■ In any event, in the absence of a showing of bad faith or prejudice Baker's intercepted conversations thus properly could be considered as those of a participant yet unknown at the time of the application and could be utilized for evidence, notwithstanding the absence of reference to him in the intercept application, providing that the showing was sufficient with respect to Judd and his telephone over which the interceptions questioned by Baker were made. Cf. *U. S. v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). See also *U. S. v.*

---

4. *United States v. Santora,* 583 F.2d 453 (9th Cir. 1978), *supra; United States v. Abascal,* 564 F.2d 821, 825 (9th Cir. 1977); *United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir. 1977); *United States v. Scully,* 546 F.2d 255, 260–61 (9th Cir. 1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1168, 50 L.Ed.2d 578 (1977); *United States v. Feldman,* 535 F.2d 1175, 1179 (9th Cir. 1976); *United States v. Kalustian,* 529 F.2d 585, 588–589 (9th Cir. 1975); *United States v. Turner,* 528 F.2d 143, 152 (9th Cir.), *cert. denied sub nom. Grimes v. United States,* 423 U.S. 996, 96 S.Ct. 426, 46 L.Ed.2d 371 (1975); *United States v. Smith,* 519 F.2d 516, 518 (9th Cir. 1975); *United States v. Kerrigan,* 514 F.2d

35, 38 (9th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975).

5. The application was in the form of an affidavit by the Special Attorney for the Department of Justice. While he set out the context and results of the investigative summary and ventured conclusions concerning satisfaction of the statutory requirements, the lower court had to look primarily to the affidavit of Robert Edward Jones, Special Agent of the Federal Bureau of Investigation, as do we, to determine whether the requisite factual showing had been made.

*Santarpio,* 560 F.2d 448, 454 (1st Cir.), *cert. denied sub nom. Schepici v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977); *U. S. v. Sklaroff,* 552 F.2d 1156, 1158 (5th Cir. 1977), *cert. denied sub nom. Goldstein v. U. S.,* 434 U.S. 1009, 98 S.Ct. 718, 54 L.Ed.2d 751 (1978); *U. S. v. De La Fuente,* 548 F.2d 528, 538 (5th Cir.), *cert. denied sub nom. Sierra et al. v. U. S.,* 434 U.S. 954, 98 S.Ct. 479, 54 L.Ed.2d 312 (1977); *U. S. v. Joseph,* 519 F.2d 1068 (5th Cir.), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1975). See also *United States v. Scully,* 546 F.2d 255 (9th Cir. 1976), *cert. denied,* 430 U.S. 970, 97 S.Ct. 1168, 60 L.Ed.2d 578, *supra.*

Yet there remains the question whether by reason of any flaw in the Jones affidavit peculiar to Judd the showing was insufficient to sustain interception of conversations over Judd's telephone, including those of Baker. We do not here question the standing of Baker to raise this point. *Abascal,* 564 F.2d at p. 825.

■ If the foundations for a wiretap are established with regard to a particular telephone, ordinarily it is not fatal to the order of interception for that telephone that the particularization with regard to another telephone or principal may be insufficient.[6] Conversely, if there is no foundation for an interception of a wire communication over a telephone for want of a particularized showing of need, it will not suffice as to that telephone that there is a foundation for the wiretapping of other telephones. This is the teaching of *Abascal* and *Santora.*[7] So a showing that two or more principals are involved in one conspiracy as to one of which a sufficient affidavit has been filed is not alone sufficient to support an application as to all of the alleged principals or their telephones. But a particularized need for wiretaps may be established as to several principals and their telephones, depending upon the circumstances alleged, not only by a minutia of detail discretely directed, but by persuasive facts pertaining in common to all of the principals and their telephones.

■ The Jones affidavit, in addition to individually directed details, does allege circumstances pertaining to all of the tapped telephones and the putative participants that meet the tests laid down by this court. These included a factual showing of due consideration of the possibilities of infiltration, the infeasibility of locating gambling records, the reluctance of informants to testify in court, the probable unproductiveness of investigation through grand jury proceedings, the conducting of numerous physical surveillances of all of the principals listed in the affidavit, including Judd, and the discovery that they were particularly wary of surveillance. These general allegations were particularized by specific examples of difficulties and obstructions encountered in the process.

It is true that Judd's situation unlike that of other suspects was not covered by specific examples of unsuccessful physical surveillance or infiltration. Yet we believe that the Jones affidavit read as a whole reasonably established as to Judd, as well as to the others named, that other or additional in-

6. Where proof of the jurisdictional number of participants is dependent upon the validity of the other wiretaps or where a particular wiretap otherwise valid constitutes the "fruits of an illegal wiretap", a particular defendant who could claim no flaws in the tap of his own telephone may have standing to question the validity of other taps by reason of a failure of the foundational affidavit to set forth facts adequately showing for all of the wiretaps that traditional investigation techniques had been attempted, had failed or were unlikely to succeed. See 18 U.S.C. § 2515; *United States v. Iannelli,* 477 F.2d 999 (3d Cir. 1973), *aff'd,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1974); *United States v. Spagnuolo,* 549 F.2d 705 (9th Cir. 1977), *supra,* at pp. 711–712. See also *Abascal, supra,* at 827. This is not the situation here, where all other taps were at least as clearly supported as the tap on Judd's line.

7. Two wiretaps were involved in *Abascal.* As to one, there was "little doubt of the sufficiency of the supporting affidavit." The court held with regard to the second tap on the basis of a showing similar to the one made here that its supporting affidavit also was sufficient. In *Santora,* an affidavit purportedly supporting a second tap was held insufficient because it relied by reference upon an affidavit dealing with a prior tap and different suspects.

vestigative procedures short of electronic surveillance if further pursued would be unlikely to succeed. Government investigators, subject to evaluation by the courts on similar bases, are entitled to use reason and common sense in the performance and documentation of their investigations to support applications for wiretaps. The statute does not mandate the indiscriminate pursuit to the bitter end of every non-electronic device as to every telephone and principal in question to a point where the investigation becomes redundant or impractical or the subjects may be alerted and the entire investigation aborted by unreasonable insistence upon forlorn hope. Upon the showing made, the district court could reasonably conclude, and did so, that alternative means of investigation had failed or likely would be unsuccessful as to Judd.

The order approving the interceptions being valid, the admission into evidence of the conversations participated in by Baker over Judd's telephone was proper.

## II

### SUFFICIENCY OF THE EVIDENCE

Baker joined with the other defendants, without waiving objections to the wiretap order, in a stipulation of facts. The other defendants agreed that the information therein recited was sufficient to support findings of their guilt, but Baker declined to accede to the latter construction as pertaining to himself, and submitted a supplemental affidavit which he asked the court also to consider in his defense.

Revealed by the authorized interceptions were the operations of a gambling business which received wagers on college and professional sports, the majority of such wagers consisting of football bets placed by telephone. In all, more than $140,000 in bets were received from 86 persons during the 13-day period of the interceptions. The daily operations of the gambling business were conducted primarily at a residence in Fresno leased to defendant Robert Monopoli. During the period in question, defendants Robert Monopoli, Julius Monopoli, Bruce Wilkins and David Hunt disseminated line information to, and accepted bets from, betters on a telephone at the Fresno office and two other locations.

John Judd was an independent bookmaker who accepted bets at his Bakersfield residence. Every few days during the indictment period, Wilkins called defendant Judd in Bakersfield and received the "line" [8] from Judd on basketball and football games to be played in the coming week. No other source of line information was used by the gambling business. Wilkins also placed lay-off wagers [9] with Judd by telephone. The gambling business did not use any other outlet for lay-off wagers. In addition, Judd was a one-third partner with Robert Monopoli and Wilkins in the profits or losses resulting from bets placed in Fresno with football cards.

Baker was an independent bookmaker who operated from a residence in Arroyo Grande, California. On five occasions on five separate days during the indictment period, he supplied line information to Judd, which Judd relayed to Wilkins or Monopoli; Wilkins and Monopoli disseminated such line information to their betters or agents in Fresno. On five occasions on five sepa-

8. The "line" or "point spread" is a number of points given to the weaker team in a particular contest to make it as likely to win as the stronger team. The bookmaker must utilize a line to assure that bets are attracted to each team in equal amounts. If a bookmaker can achieve equal wagers on each team, he assumes no risk on the outcome of the game but is guaranteed a profit he charges the losing betters. (Stipulation of the parties.)

9. When betting action becomes heavy on one side, the bookmaker uses three principal devices to bring the betting volume into parity. He may refuse to accept bets on the heavy side hoping that continued betting on the other side will bring the game into balance. He may adjust the line making the underbet side a more attractive wager. More probably, however, particularly if game time is near, the bookmaker will bet the excess with another bookmaker. Known as a "lay-off" bet this wager is placed as if the laying-off bookmaker is betting and he must make the wager at the second bookmaker's line and must pay the prevailing profit if he loses. (Stipulation of the parties.)

rate days during this period Baker accepted a total of $3,700 in lay-off wagers from Judd, which Judd had received as lay-off wagers from Wilkins or Monopoli.

After receiving this and other information through the wire interceptions, FBI agents executed search warrants. At James Baker's residence they found numerous line sheets and betting slips and a settlement sheet reflecting 19 accounts. Transcripts of the detailed communication interceptions indicated a close relationship between the business Judd and Baker transacted over the telephone and the gambling business conducted by the other defendants.

■ Supplementing by affidavit the agreed statement of facts, Baker alleged that he or Judd received line information by calling J. K. Sports, Inc., in Los Angeles; that he did not furnish line information to Judd with knowledge that it would be relayed to Monopoli or Wilkins; that the wagers he received from Judd were on Judd's personal account and were not lay-off bets; and that he was not aware at any time during the indictment period of the Fresno gambling operation. Although it appears that Baker had no knowledge of the Fresno operation as such, the stipulation does not support his claim that Judd received line information from J. K. Sports. The stipulation indicates that Baker knew that Judd's wagers were lay-off bets because in one of the conversations Judd told Baker, "It's a lay-off from a place up there. See under 'me'." ("Me" was the designation of an account referred to previously by Judd in relaying bets received from another member of the organization.) The trial court was not bound to accept defendant's allegations at face value and could draw reasonable inferences from the stipulation of facts.

■ It was reasonable to conclude that Baker violated Section 1955 because he regularly and directly exchanged line information and lay-off bets with Judd as an integral part of the illegal gambling business. This conviction finds ample support in the record.[10]

Affirmed.

**10.** *United States v. Sacco,* 491 F.2d 995 (9th Cir. 1974); *United States v. Santarpio,* 560 F.2d 448 (1st Cir.), *cert. denied sub nom. Schepici v. United States,* 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977), *supra; United States v. Alfonso,* 552 F.2d 605 (5th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977), *supra; United States v. DiMuro,* 540 F.2d 503 (1st Cir. 1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *Unit-*

ed *States v. Schaefer,* 510 F.2d 1307 (8th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1980, 44 L.Ed.2d 470 (1975); *United States v. Smaldone,* 485 F.2d 1333 (10th Cir. 1973), *cert. denied,* 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *United States v. Thaggard,* 477 F.2d 626 (5th Cir. 1973); *United States v. Iannelli,* 477 F.2d 999 (3d Cir. 1973), *aff'd,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1974), *supra.*