**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William DeJESUS (88–3899) and Marvin Bishop (88–3900),**
**Defendants–Appellants.**

**Nos. 88–3899, 88–3900.**

United States Court of Appeals,
Sixth Circuit.

Argued June 15, 1989.

Decided Oct. 10, 1989.

Rehearing and Rehearing En Banc
Denied Nov. 21, 1989.

James V. Moroney (argued) and Kenneth S. McHargh, Asst. U.S. Atty., Office of the U.S. Atty. Cleveland, Ohio, for the U.S.

Thomas A. Shumaker (argued), D'Andrea, Shumaker, Portman & Honeck and David A. Wallace (argued), Akron, Ohio, for William DeJesus and Marvin Bishop, defendants-appellants.

Before KEITH and WELLFORD, Circuit Judges, and GILMORE, District Judge.*

KEITH, Circuit Judge.

Defendants, William DeJesus and Marvin Bishop, appeal from judgments of conviction, after jury trial, for conspiracy to distribute cocaine, 21 U.S.C. § 846, and conspiracy to possess, with the intent to distribute, cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). For the reasons which follow, we AFFIRM.

## I.

On January 20, 1988, DeJesus and Eugenio Bautista were arrested in the Southern District of New York by a task force composed of FBI agents and New York City police detectives as they were about to board a bus to Cleveland, Ohio. Two kilograms of cocaine were found in their possession. The authorities were led to DeJesus and Bautista through wiretaps authorized upon an application by the FBI for interception orders for numbers listed under Caonabo DeJesus and German Bautista. These orders were originally in effect from December 4, 1987 through January 2, 1988; upon the FBI's application for an extension on January 15, 1988, the orders were again in effect from January 15, through January 21, 1988. Agents monitoring the conversations intercepted the name "Marvin," and heard that "Marvin" was engaged in drug-related conversations, but did not list his name in the January 15, 1988 application.

On January 21, 1988, the morning after Gary Bautista and William DeJesus were

arrested, Cleveland FBI agents made three "pretext" calls to two numbers at which "Marvin" had been contacted or that "Marvin" had given. Marvin Bishop eventually came to the telephone and agreed to meet whom he thought were Eugenio Bautista and William DeJesus at a hotel near Cleveland. When he arrived, he was arrested by Cleveland FBI agents.

After his January 20, 1988 arrest, William DeJesus was indicted in the Southern District of New York on February 4, 1988. Although the New York indictment is not a carbon copy of the Ohio indictment, the conspiracy, as well as its members, are substantially the same. As the result of a detention order, DeJesus was continuously confined since January 20, 1988. On March 29, both DeJesus and Bishop, among others, were indicted in the Northern District of Ohio. Both were arraigned on April 15, 1988.

On May 5, 1988, Bishop moved for suppression of all wiretap interceptions involving him. In his motion, Bishop alleged that the FBI, despite having probable cause to suspect him of the activity under investigation, did not name him in the January 15, 1988 application, and that he was therefore excluded from the interception order in violation of 18 U.S.C. §§ 2518(1)(b)(iv) and § 2518(4)(a). Moreover, Bishop argued that, due to his exclusion from the application and order, he did not receive the inventory notice required by 18 U.S.C. § 2518(8)(d). The district court denied this motion, ruling that the FBI did not have sufficient information to name Bishop in the January 15th application, and that he had received actual notice of the interceptions.

On May 24, 1988, William DeJesus filed a motion to dismiss the Ohio indictment for violation of his right to a speedy trial. In that motion, DeJesus argued that, as of the date his speedy trial motion was filed, he had been incarcerated for nearly five months "on the same or similar charges in

---

* Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

the Southern District of New York," in violation of the sixth amendment and 18 U.S.C. § 3161. In denying this motion, the district court concluded that only the time since the Ohio indictment should be considered in computing whether there had been a speedy trial violation. In the alternative, the district court found that, even if the New York time were counted pursuant to 18 U.S.C. § 3161(h)(7), the joining of Bishop as a co-defendant for whom the time for trial had not run made the period of delay reasonable.

Trial on the Ohio indictment commenced on June 15, 1988. The jury returned verdicts of guilty on June 21, 1988. This appeal followed.

## II.

On appeal, DeJesus argues that the period running from his arrest and incarceration in the Southern District of New York, combined with the time elapsed in the Northern District of Ohio, exceeded the statutory seventy day period under 18 U.S.C. § 3161(c)(1), and that he was therefore denied his right to a speedy trial under the Speedy Trial Act.[1] 18 U.S.C. § 3161(c)(1) provides that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

Thus, if the New York time is included, the speedy trial clock began to run on February 4, 1988, the date that DeJesus was indicted in the Southern District of New York, and stopped on June 15, 1988, the date on which trial commenced in the Northern District of Ohio.

The question of whether the time after indictment in one district ought to be included within the Speedy Trial Act computation if a subsequent indictment in another district involves the same conspiracy appears, somewhat surprisingly, to be an issue of first impression. Although this presents a rather interesting problem, we conclude that, even if we assume that the New York time is to be included, no Speedy Trial Act violation occurred.

18 U.S.C. § 3161(h)(7) provides that:

> (h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

> .    .    .    .    .

> (7) A reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted.

Co-defendant Bishop, as well as two other co-defendants were joined in the Ohio indictment. The time for Bishop's trial had not run, and obviously no severance was granted. Although the district court was not specific in its reasons for concluding that the period of delay was reasonable, it did note the requirements of 18 U.S.C. § 3161(h)(7), and further observed that the Ohio indictment involved thirteen defendants. Moreover, clearly Bishop's indictment in the Northern District of Ohio represented a significant addition to the case. Under these circumstances, the "strong congressional preference for joint trials and ... intention that delays resulting from the joinder of co-defendants be liberally excluded" would be ill-served by dismissal. *United States v. Novak*, 715 F.2d 810, 814 (3rd Cir.1983). Therefore, the district court did not err in denying DeJesus' motion for dismissal.

---

1. Although DeJesus also raised a sixth amendment speedy trial claim, our resolution of his Speedy Trial Act claim eliminates the necessity of reaching the constitutional claim. As stated in, e.g., *United States v. Nance*, 666 F.2d 353 (9th Cir.1982), *cert. denied*, 456 U.S. 918, 102 S.Ct. 1776, 72 L.Ed.2d 179 (1983), "it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated." 666 F.2d at 360. No such circumstances are presented here.

### III.

Bishop argues that, because the FBI did not include his name in the January 15, 1988 application for an interception order, he was improperly excluded from the order in violation of 18 U.S.C. §§ 2518(1)(b)(iv) and 2518(4)(a). He further contends that he did not receive a formal inventory notice as required by 18 U.S.C. § 2518(8)(d).

■ Bishop's first argument is based on his contention that the FBI had probable cause to believe that he was involved in the suspected conspiracy. However, as the district court aptly demonstrated in summarizing the evidence adduced at the hearing on Bishop's motion, the FBI simply did not have sufficient knowledge of Bishop's identity on January 15, 1988 to list him in the application:

> The affiant for the wiretap applications FBI Special Agent Andrews appeared and testified. He acknowledged that the wiretap recordings in late December and in early January of 1988, prior to the second application made on January 15, 1988, produced information about a person by the name of Marvin in the Cleveland area at a specific phone number. However, attempts by Andrews to learn the identity of the person named Marvin were unsuccessful as the phone number did not relate to anyone by the name of Marvin. After the second wiretap application and order were issued on January 15, 1988, the information apparently led to the arrest of two of the indicted co-conspirators and the seizure of a substantial quantity of cocaine. The arrested co-conspirators were allegedly on their way to Cleveland to deliver the cocaine to the person known as "Marvin." On the next day, January 21, 1988, the phone number identified as connected with the unknown Marvin was used and Marvin was invited to the Best Western motel in the Cleveland area, ostensibly to take delivery of the cocaine supposedly being delivered from New York. The defendant Marvin Bishop arrived in response to the call and was arrested by the agents of the FBI. The case agent in charge of the investigation, Gwen McClure, also testified at the suppression hearing and stated that she told the defendant that his voice had been intercepted as a result of a court ordered wire tap in New York City. McClure also corroborated the testimony of Andrews, the affiant for the New York wire taps to the effect that the identity of Marvin was not established until he appeared at the motel on January 21 despite their attempts to identify the unknown Marvin for the New York FBI agents.

Order of June 8, 1988.

■ Concerning Bishop's argument that 18 U.S.C. § 2518(8)(d) was violated, he is clearly correct that he did not receive an inventory notice within the statutory period, and the government concedes as much. However, the Supreme Court has stated that "[n]othing in the structure of [Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520, which includes the pertinent wiretap inventory provision] or [the] legislative history suggests that incriminating conversations are 'unlawfully intercepted' whenever parties to those conversations do not receive discriminatory inventory notice as a result of the Government's failure to inform the District Court of their identities." *United States v. Donovan,* 429 U.S. 413, 438, 97 S.Ct. 658, 673, 50 L.Ed.2d 652 (1977). Thus, absent a showing of bad faith or actual prejudice, neither of which are present here,[2] the failure to serve Bishop with a formal inventory notice does not justify suppression. *United States v. Landmesser,* 553 F.2d 17, 22 (6th Cir.1977).

### IV.

Accordingly, for the foregoing reasons, the judgments of conviction are AFFIRMED.[3]

---

2. Bishop received actual notice of the interception of his conversations through his March 29, 1988 indictment. Moreover, full pretrial access to all tapes and transcripts was allowed.

3. DeJesus and Bishop raise several other issues. Upon review, we conclude that they are without merit.