In the
United States Court of Appeals
For the Seventh Circuit

No. 98-1178

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

HERMAN MATTHEWS, also known as YUM,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 94 CR 333--William T. Hart, Judge.

ARGUED FEBRUARY 17, 2000--DECIDED May 26,
2000

   Before Harlington WOOD, JR., COFFEY and
RIPPLE, Circuit Judges.

   COFFEY, Circuit Judge.  On August 25,
1994, a grand jury in the Northern
District of Illinois returned a 43-count
indictment charging the defendant-
appellant, Herman Matthews, also known as
"Yum," and 17 others with a variety of
drug-related offenses. On January 12,
1995, a 66-count superseding indictment
naming Matthews and 15 others was filed
in the Northern District of Illinois./1

   Prior to trial, Matthews filed a motion
to suppress electronic surveillance
evidence gathered against him in the
course of the court-ordered wiretap on
the phone of suspected drug dealer,
Mukglis Toma. Matthews argued that the
wiretap evidence must be suppressed
because he was not named or identified in
any of the applications for extensions of
the wiretap or in the orders granting
those extensions. The trial judge denied
Matthews' motion to suppress.

   Undeterred by the denial of his motion
to suppress, Matthews elected to go to
trial, and on June 6, 1997, a jury found

Matthews guilty of Counts 1, 7, 13, 14, 16, 44, and 45./2 The judge then sentenced Matthews to a term of imprisonment of 188 months, to be followed by five years of supervised release, and a special assessment of $350. Matthews was also ordered to forfeit $28,000. We affirm.

I.  BACKGROUND

During 1993 and 1994, Matthews and others participated in a conspiracy to possess, with the intent to distribute, cocaine and marijuana in the Chicago, Illinois, area./3 A wholesaler of cocaine and marijuana, named Mukglis Toma, was at the center of the conspiracy, receiving drugs from suppliers and distributing them to customers; Matthews was one of Toma's biggest customers.

On January 20, 1994, a judge in the Northern District of Illinois approved the government's application for a thirty-day wiretap on Toma's cellular phone, and thereafter granted three extensions so that the wiretap ran through May 12, 1994.

Shortly after the wiretap was activated, FBI agents discovered that Toma repeatedly called a particular pager number and that each time he called that pager, he received a return phone call shortly thereafter from an individual identifying himself as "Yum." The FBI intercepted many of these phone conversations discussing and arranging drug transactions in which Toma agreed to provide Yum with cocaine and marijuana for distribution.

After subpoenaing the phone records of Yum's pager, the agents learned that it was registered to Fred Wyatt of 503 East End Avenue in Calumet City, Illinois; thus, the FBI agents were led to believe that Yum was Fred Wyatt. Accordingly, all further applications for extensions of the wiretap listed Fred Wyatt as one of the individuals whose conversations were likely to be the subject of the authorized phone interceptions.

There were a number of reasons that the FBI believed that Wyatt was Yum. The pager number that Toma called was

registered to Wyatt. Wyatt, whom agents learned had a criminal history,/4 lived in the immediate area of the suspected drug activity. In several of their recorded conversations, Toma and Yum discussed meeting at a hot dog stand to conduct their drug transactions. Because Wyatt lived near a hot dog stand, the FBI set up surveillance at the stand near Wyatt's home on a number of occasions in the hope of observing him in a narcotics transaction. After the surveillance at the hot dog stand nearest to Wyatt's house proved unfruitful as to drug activity, the FBI set up surveillance at other hot dog stands in the vicinity of Wyatt's house. Despite their repeated efforts, the FBI never observed the individual who identified himself as Yum purchase any narcotics.

After the authorization for the wiretap expired, the FBI attempted to arrest those persons whom it concluded were involved in the drug trafficking conspiracy at issue. At the time, the FBI was still convinced that the individual identifying himself as Yum was Fred Wyatt, and on May 13, 1994, federal authorities arrested Wyatt and brought him in for questioning. The arresting agents concluded, shortly thereafter, that, despite their earlier information and belief, Wyatt was not Yum. Wyatt was released from custody and all charges against him were dismissed. As a result of this setback, the FBI continued to investigate the drug conspiracy.

After certain individuals involved in this conspiracy were arrested and began to cooperate with the authorities in the investigation, the FBI became aware of the fact that "Yum" was actually Herman Matthews; thereafter, Matthews was arrested and admitted that Yum was, in fact, one of his nicknames. Matthews, alias "Yum," was then charged along with fifteen other individuals with several counts of possession of cocaine and marijuana with intent to distribute.

Prior to trial, Matthews filed a motion to suppress the electronic surveillance evidence gathered in the course of the court-ordered wiretap on the phone of suspected drug dealer, Mukglis Toma. Matthews argued that even after the authorities had intercepted phone calls made by "Yum," one of Matthews' aliases,

he was neither named nor identified in any applications for extensions of the wiretap order or in the orders granting such extensions. Thus Matthews claimed that Title III of the Omnibus Crime Control and Safe Streets Act of 1968 had been violated, and any communications involving him which occurred after the government learned of "Yum's" involvement must be suppressed. See 18 U.S.C. sec.sec. 2518(1)(b)(iv) and (4)(a)./5 The trial judge rejected Matthews' arguments and, as stated previously, a jury convicted Matthews of all but one of the Counts charged in the indictment.

Matthews appeals the denial of his motion to suppress, arguing that the wiretap orders were invalid because they failed to provide sufficient information as to the identity of those individuals whose communications were likely to be intercepted.

II.  DISCUSSION

As we have repeatedly stated, "[w]hen reviewing the denial of a motion to suppress, we review the district court's conclusions of law de novo, and we review the court's findings of fact for clear error." United States v. Taylor, 196 F.3d 854, 859-60 (7th Cir. 1999) (citation omitted).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III) requires that each application authorizing the interception of wire communications include "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U.S.C. sec. 2518(1)(b)(iv) (emphasis added). Title III also requires that each order authorizing the interception of wire communications include the identity of persons, if known, whose communications are likely to be intercepted. See 18 U.S.C. sec. 2518(4)(a). Title III provides that intercepted communications may be suppressed if:

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

(iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. sec. 2518(10).

The Supreme Court has previously addressed the issue of wiretap applications, orders, and interceptions, and under what circumstances the information obtained from electronic surveillance must be suppressed. See United States v. Donovan, 429 U.S. 413 (1977). In Donovan, the government's wiretap application listed six individuals suspected of transacting illegal gambling over the telephone wires. In the course of monitoring the telephone calls, the government learned the names of other individuals who were participating in the alleged illegal gambling. In applying for wiretap extensions, the government failed to identify these additional individuals. The government later indicted several of these unnamed individuals, and they in turn moved to suppress the wiretap evidence based on the government's failure to comply with 18 U.S.C. sec.sec. 2518(1)(b)(iv) and (4)(a) in that it did not identify those individuals in spite of the fact that agents learned of their identity during the course of its investigation. The trial court granted the unnamed individuals' motion to suppress, and the Sixth Circuit affirmed. The Supreme Court reversed, stating that wiretap applications must contain the name of an individual if the government has probable cause to suspect that the individual is engaged in illegal activity and is likely to be intercepted. See Donovan, 429 U.S. at 428, 431-37. However, the Court went on to hold that suppression of the evidence is not necessarily the appropriate remedy for a violation of Title III unless the defendant demonstrates either 1) bad faith on the part of the government; or 2) prejudice resulting from his failure to be named in or timely notified of the intercept order. See id. at 439 n.26; 54 A.L.R. Fed. 599 (1981).

The wiretap statute provides that a court may approve a wiretap application if it determines that normal investigative techniques have failed or are not likely to succeed and there is

probable cause to believe that: 1) an individual is engaged in criminal activity; 2) communications about the offense will be obtained through interception; and 3) the target facilities are being used in connection with the suspected criminal activity. See 18 U.S.C. sec. 2518(3)(a)-(d). The Donovan Court noted that if a surveillance application meets the standards enumerated in the statute and a "judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization." 429 U.S. at 435 (emphasis added). The Court held that because there was no evidence that the government agents knowingly failed to identify the unnamed individuals in an attempt to conceal relevant information that might have suggested that probable cause was lacking from the court issuing the order, suppression was not warranted. See id. at 436 n.23; see also United States v. DeJesus, 887 F.2d 114, 117 (6th Cir. 1989); United States v. Davis, 882 F.2d 1334, 1344 (8th Cir. 1989); United States v. Savaiano, 843 F.2d 1280, 1291 (10th Cir. 1988); United States v. Baker, 589 F.2d 1008, 1011-12 (9th Cir. 1979).

  Matthews attempts to distinguish the case before us from Donovan by arguing that the government intentionally misled the district judge who authorized the issuance of the intercept order by naming Fred Wyatt in the extension applications but not Yum. Matthews claims that the government knew that Wyatt and Yum were not the same person but intentionally concealed this fact from the issuing judge because it would have somehow jeopardized the government's investigation of this particular drug conspiracy.

  The district court dismissed Matthews' theory as implausible, finding that it "defies belief." The judge concluded that the fact that the government disclosed Wyatt's name in its request for an extension of the surveillance orders was sufficient, finding that the FBI reasonably believed Wyatt to be the identity of the intercepted voice. The record provides ample support for the trial judge's conclusion that the government's failure to name Herman

Matthews in its applications for extensions was based on a lack of knowledge of the true identity of the intercepted voice. We are of the opinion that this conclusion is logical and reasonable: Yum's pager was registered to Wyatt; Wyatt had a criminal record and lived in the area of the suspected illegal narcotics activity; Wyatt's house was located near a hot dog stand; and Toma and Yum often planned and discussed future transactions to take place near hot dog stands. Furthermore, the record is barren of any evidence that might lead us to conclude that the district judge erred in finding that the government made an honest mistake in failing to name Yum or Matthews in its applications for surveillance; the fact remains that the police reasonably believed that Fred Wyatt was Yum, and that the officers did not know the real identity of Yum until other individuals were arrested and began to cooperate with the authorities. The fact that further investigation revealed that Wyatt was not Yum does not make the officers' original belief unreasonable. Because Matthews has failed to establish bad faith on the government's behalf, much less any prejudice he suffered, we agree with the trial judge and conclude that the admission of the wiretap evidence was proper.

The decision of the district court is

AFFIRMED.

/1 The superseding indictment named Matthews in Counts 1, 7, 13, 14, 16, 44, 45, and 66. Count One charged Matthews and the other defendants with conspiracy to distribute cocaine and marijuana and with possession with intent to distribute kilogram quantities of cocaine and pound quantities of marijuana. See 21 U.S.C. sec.sec. 846 and 841(a)(1). Counts 7, 13, and 44 charged Matthews with possession with the intent to distribute unspecified quantities of cocaine, see 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2, while Counts 14 and 45 charged the defendant Matthews with the use of a communication facility to commit and facilitate the commission of felony drug offenses in violation of 21 U.S.C. sec. 843(b) and 18 U.S.C. sec. 2. Count 16 charged him with possession with intent to deliver four kilograms of cocaine, see 21 U.S.C. sec. 841(a)(1) and 18 U.S.C. sec. 2. Finally, Count 66 charged Matthews and others with using and

carrying firearms during and in relation to the commission of a drug trafficking crime, in violation of 18 U.S.C. sec.sec. 924(c) and 2.

/2 Matthews never went to trial on Count 66. Upon the motion of the government, Count 66 was dismissed at sentencing.

/3 For a more detailed discussion of the facts surrounding the drug conspiracy, see United States v. Magana, 118 F.3d 1173, 1178-80 (7th Cir. 1997). Magana involved the consolidated appeals of eight of Matthews' co-conspirators who were convicted of a variety of federal narcotics offenses.

/4 The record does not reflect the exact nature of Wyatt's police record.

/5 Title III of the Omnibus Crime Control and Safe Streets Act of 1968 requires that each application authorizing the interception of wire communications include "the identity of the person, if known, committing the offense and whose communications are to be intercepted," 18 U.S.C. sec. 2518(1)(b)(iv), and that each order authorizing the interception of wire communications specify "the identity of the person, if known, whose communications are to be intercepted." 18 U.S.C. sec. 2518(4)(a) (emphasis added).