UNITED STATES of America, Plaintiff,

v.

Diane BENNETT, Calvin Bennett, Tyrous Clinton Mills, a/k/a Drey, Shirley Fern Olson, a/k/a Kelly, Suds, Naomi Mills, Gregory Adams, a/k/a "G", Greg, Thomas Hickman, Sharon Dixon, Tracy Davison, Meredith Murillo, a/k/a "Eve", Mary Martinez, James Givens, Rosalind Frascona, Donnie Eden, Joyce Williams, Angela Roberts, Andrew White, and George Brown, Defendants.

Civ. A. No. 93 CR 40.

United States District Court,
D. Colorado.

June 25, 1993.

Craig F. Wallace, Asst. U.S. Atty., Denver, CO, for plaintiff.

Jeralyn E. Merritt, Denver, CO, for Calvin Bennett.

Martha K. Horwitz, Denver, CO, for Shirley Fern Olson.

Stanley H. Marks, Denver, CO, for Gregory Adams.

David L. Miller, Denver, CO, for Sharon Dixon.

Craig B. Shaffer, Terry Jo Epstein, Denver, CO, for Meredith Murillo.

Rod W. Snow, Denver, CO, for Diane Bennett.

Michael G. Katz, Federal Public Defender, for Tyrous Clinton Mills.

David C. Japha, Denver, CO, for Naomi Mills.

Donald L. Lozow, Denver, CO, for Thomas Hickman.

Joseph Saint–Veltri, Denver, CO, for Tracy Davison.

Charles B. Hecht, Denver, CO, for James Givens.

Philip Dubois, Boulder, CO, for Rosalind Frascona.

Mary A. Kane, Denver, CO, for Joyce Williams.

Richard N. Stuckey, Denver, CO, for Andrew White.

Scott Jurdem, Englewood, CO, for Donnie Eden.

Elisa J. Moran, Denver, CO, for Angela Roberts.

Arthur S. Nieto, Lakewood, CO, for George Brown.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, Judge.

The indictment in this case charges all defendants with conspiring to possess, with intent to distribute, more than five kilograms of cocaine, in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(A)(ii), and 846 (West 1981 & Supp.1993). The matter is before the court on numerous motions to suppress tapes of communications intercepted through the use of a wiretap device.[1] On May 14 and 21, 1993, the court held a hearing concerning defendants' motions to suppress. The following recitation constitutes the court's findings of fact and conclusions of law on all issues relating to suppression of evidence obtained through the use of wiretaps.

## FINDINGS OF FACT

Two wiretaps were authorized in this case. The first wiretap, 92–WT–12, involved telephone number 303–368–0272, located at 1771 S. Quebec Way, Apartment Q–202, and subscribed to by Defendant Tyrous Mills. It was authorized by an "Order Authorizing the Interception of Wire Communications" which Chief United States District Judge Sherman G. Finesilver signed on October 26, 1992. This wiretap was extended by an "Order Authorizing the Extension of Interception of Wire Communications" which I signed on November 25, 1992.

The second wiretap, 92–WT–14, involved telephone number 303–766–3096, located at 4608 S. Kittridge Street, and subscribed to by Ms. Ellen Roy. It was authorized by an "Order Authorizing the Interception of Wire Communications" which United States District Judge Lewis T. Babcock signed on November 20, 1992. It was extended by an "Order Authorizing the Extension of Interception of Wire Communications" which Judge Babcock signed on December 24, 1992.

Defendants challenge the validity of these two wiretaps on a number of grounds. According to defendants, evidence obtained as a result of these wiretaps should be suppressed because (1) the orders authorizing the interceptions are facially insufficient; (2) the orders fail to meet the "necessity" requirement of sections 2518(1)(c) and (3)(c); (3) the tapes were not sealed immediately; (4) the affidavits attached to the applications do not contain a sufficient showing of probable cause; (5) the officers did not minimize the interceptions in conformity with the minimization provision of the orders; and (6) various technical or clerical errors are contained in the orders. With respect to these contentions, I conclude as follows: (1) The orders and extensions for both wiretaps are facially sufficient. Even if they were not sufficient, suppression of the evidence is not required here. (2) The orders and extensions adequately demonstrate the "necessity" for the wiretaps. (3) The short delay in sealing the tapes was excusable. (4) The affidavits attached to the applications establish probable cause. (5) The officials reasonably minimized the interceptions of communications. (6) The clerical errors do not invalidate the wiretap orders. Defendants' motions to suppress evidence obtained through the intercepted communications are denied.[2]

## CONCLUSIONS OF LAW

### I. Facial Sufficiency of the Wiretap Orders

#### A. Statutory Background

 Electronic eavesdropping by law enforcement officials is governed by the federal

---

1. Defendant Angela Roberts' "Motion to Suppress Evidence Obtained Through the Use of a Pen Register, Wiretap, Oral Intercept Device and Video Surveillance Camera" (filed Mar. 11, 1993); Defendant Calvin Bennett's "Motion to Suppress Intercepted Communications" (filed Apr. 30, 1993); Defendant Tyrous Mills' "Motion to Suppress Wire Tap Evidence" (filed Apr. 30, 1993); Defendant Tracy Davison's "Motion to Suppress Intercepted Communications" (filed May 3, 1993); and Defendant James Givens' "Motion to Suppress Wire Tap Evidence" (filed May 7, 1993).

2. Since both wiretap orders and their extensions contain the same alleged frailties, I will, for the sake of clarity, treat the two orders and their extensions as two orders.

wiretap statute, title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C.A. §§ 2510–2521 (West 1970 & Supp.1993). Title III has a dual purpose of (1) protecting the privacy of wire and oral communications and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized. *See* Omnibus Crime Control and Safe Streets Act, Pub.L. No. 90–351, 1968 U.S.C.C.A.N. (82 Stat.) 2112, 2153. To assure the privacy of oral and wire communications, title III establishes a three-tiered procedure for obtaining authorization to intercept wire or oral communications. First, a duly-authorized law enforcement officer must obtain approval from the United States Attorney General or a specially designated Assistant Attorney General in order to apply to a federal judge for a wiretap. *See* 18 U.S.C.A. 2516(1) (West 1970). Second, once such approval is obtained, the officer must present a written application for a wiretap to the judge. Third, the judge must make certain enumerated findings and issue an ex parte order containing specified elements. *See* 18 U.S.C.A. 2518(1), (3), and (4) (West 1970). Strict adherence to these procedural steps is a prerequisite to issuance of a wiretap order. *United States v. Giordano*, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *United States v. Kalustian*, 529 F.2d 585, 589 (9th Cir.1976). *See* 114 Cong.Rec. at 14751 ("[A] bill as controversial as this ... requires close attention to the dotting of every 'i' and the crossing of every 't'. . . .") (Remarks of Sen. McClellan).

Each written application presented to the judge is supposed to include, *inter alia*, the following:

> (b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed; (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted; (iii) a particular description of the type of communications sought to be intercepted; (iv) *the identity of the person,*

> *if known, committing the offense and whose communications are to be intercepted. . . .*

18 U.S.C.A. § 2518(1)(b) (emphasis added). Upon such application, the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire or oral communications.

What the judge must find before he can issue such an order is specified in sections 2518(3)(a) through (d). On the basis of the facts submitted in the application, the judge must determine that—

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

With the findings required by subparagraphs (a) and (b), the order links up the specific person, specific offense, and specific place. 1968 U.S.C.C.A.N. (82 Stat.) at 2191. "Together they are intended to meet the test of the Constitution that electronic surveillance techniques be used only under the most precise and discriminate circumstances, which fully comply with the requirement of particularity." 1968 U.S.C.C.A.N. at 2191 (citing *Berger v. New York*, 388 U.S. 41, 58–60, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 [1967]; *Katz v. United States*, 389 U.S. 347, 354–56, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 [1967]).

Having made the findings specified by section 2518(3), the judge is supposed to issue an order specifying the matters enumerated in section 2518(4). Section 2518(4) provides:

(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

(a) *the identity of the person, if known, whose communications are to be intercepted;*

(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

18 U.S.C.A. § 2518(4) (emphasis added). The emphasized language in section 2518(4) tracks the language in section 2518(1)(b) concerning the contents of the wiretap application.

## B. Facial Sufficiency of the Orders in This Case

 The two wiretap orders in this case contain findings which mirror the statutory language of section 2518(3). For example, the first paragraph of the "Order Authorizing the Interception of Wire Communications" in 92–WT–12 states:

There is probable cause to believe that **TYROUS CLINTON MILLS,** a/k/a Drey, **SHIRLEY FERN OLSON,** a/k/a Kelly, Sandra Henderson, Shirley Olson, Sheryle Ann Thompson, **CALVIN BENNETT,** and **DIANE BENNETT,** a/k/a Diane Green, and others as yet unknown, have committed, and are committing, and will commit, violations of Title 21, United States Code, Section 841(a)(1), Distribution and Possession with Intent to Distribute a Controlled

Substance (cocaine); Title 21, United States Code, Section 843(b), Unlawful Use of a Communication Facility; Title 21, United States Code, Section 846, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance (cocaine); and Title 18, United States Code, Section 1956, Laundering of Monetary Instruments.

The two wiretap orders thus fully comply with the requirements set out in section 2518(3). It should also be noted that the applications and accompanying affidavits contain all the information required by section 2518(1)—including the statement concerning the identity of the persons committing the offenses and whose communications are to be intercepted.

The wiretap orders also comply with section 2518(4)—with one arguable exception which is the linchpin of the motions to suppress. Although the orders name certain individuals in the findings concerning probable cause (see 92–WT–12 ¶¶ a and b; 92–WT–12 Extension ¶¶ a and b; 92–WT–14 ¶¶ a and b; 92–WT–14 Extension ¶¶ a and b), no person is named in the order sections.[3] The order sections of the two wiretaps do not contain any provision tracking section 2518(4)(a), which requires identification of the persons who are to be intercepted. Instead, the orders contain the following language:

Wherefore, it is hereby ordered that the Federal Bureau of Investigation, is authorized, pursuant to an application authorized by a duly designated official of the Criminal Division, United States Department of Justice, pursuant to the power delegated to that official by special designation of the Attorney General and vested in the Attorney General by Section 2516 of Title 18, United States Code, *to intercept wire communications to and from the above-described telephone.*

The next paragraph in the order sections provides that:

---

**3.** By "order sections" I refer to the directive part of the order which follows "Wherefore, it is hereby ordered...." By "findings sections" I

refer to the first four paragraphs ([a] through [d]) of the orders.

[S]uch interceptions shall not terminate automatically after the first interception that reveals the manner in which the alleged co-conspirators and others as yet unknown conduct their illegal activities, but may continue until all communications are intercepted which reveal fully the manner in which the *above-named persons and others as yet unknown are committing the offenses described herein.*

(Emphasis supplied.) According to defendants, the wiretap orders and their extensions fail to satisfy the requirement of section 2518(4)(a) because they do not specify "the identity of the person, if known, whose communications are to be intercepted." Instead, defendants maintain, the plain meaning of this language in the orders suggests that all conversations of any person which occur on the designated phone line may be intercepted.

Defendants challenge the facial validity of the wiretap orders pursuant to section 2518(10). Section 2518(10) enumerates those instances in which evidentiary use of intercepted oral or wire communications will be prohibited under section 2515: (i) if the communication was unlawfully intercepted; (ii) if the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) if the interception was not made in conformity with the order of authorization or approval. According to defendants, the failure to identify *any* individual for whom probable cause existed in the order sections of the wiretaps renders the orders facially insufficient. The communications recorded pursuant to these two orders, defendants maintain, should therefore be suppressed. Defendants' challenge raises two distinct questions for this court: (1) Does the failure to specify *any* named interceptee in the order sections render the orders facially insufficient? and (2) If so, is suppression of the communications intercepted pursuant to the orders the proper remedy?

■ I begin analysis of the first issue by noting that an authorized order is presumed valid. *United States v. Nunez,* 877 F.2d 1470, 1470 (10th Cir.1989), *cert. denied,* 493 U.S. 981, 110 S.Ct. 513, 107 L.Ed.2d 515 (1989); *United States v. Newman,* 733 F.2d 1395, 1398 (10th Cir.1984); *United States v. Feldman,* 535 F.2d 1175, 1180–81 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976). Defendants must come forward with a prima facie showing that the wiretap was conducted pursuant to an illegal order. *United States v. Picone,* 560 F.2d 998, 1001 n. 4 (10th Cir.1977). *See United States v. Jabara,* 618 F.2d 1319, 1327 (9th Cir.), *cert. denied,* 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980); *United States v. Kilgore,* 524 F.2d 957, 958 (5th Cir.1975), *cert. denied,* 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 581 (1977); *United States v. De La Fuente,* 548 F.2d 528, 533–34 (5th Cir.), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977).

■ Although the requirements of title III should be strictly observed, not "every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez,* 416 U.S. 562, 574–75, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380 (1974). Defendants must not only demonstrate a deviation from the statutory requirements of title III, but this deviation must be substantial. Clerical errors do not constitute substantial deviations. *See De La Fuente,* 548 F.2d at 537 (clerical errors resulting in an incorrect digit or inversion of digits in [address] do not invalidate a wiretap application or order); *United States v. Sklaroff,* 506 F.2d 837 (5th Cir.) (clerical errors in one digit in one telephone number do not render application deficient), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975). *See also United States v. Doolittle,* 507 F.2d 1368, *aff'd en banc,* 518 F.2d 500 (5th Cir.), *cert. denied,* 423 U.S. 1008, 96 S.Ct. 439, 46 L.Ed.2d 380 (1975); *United States v. Vigi,* 515 F.2d 290 (6th Cir.), *cert. denied,* 423 U.S. 912, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975). Substantial compliance with the statutory requirements is all that is required. *Sklaroff,* 506 F.2d at 840.

■ It is undisputed that the order sections do not specifically name persons in accordance with section 2518(4)(a). Given the structure of sections 2518(3) and 2518(4), I think it is the better practice for judges issuing wiretap orders to insist that the Gov-

ernment specifically identify, in the order sections, the persons whose communications are to be intercepted—just as the Government here identified· such persons in the affidavits which accompanied its applications. The issue to be determined at this juncture, however, is whether this deviation from the statute is a substantial deviation. · In order to determine whether there was substantial compliance with the statute, the court looks beyond the face of the order to the facts as they actually existed to see if there was compliance with the substantive requirements of the statute. *United States v. Acon,* 513 F.2d 513, 518 (3rd Cir.1975). Courts have held that technical violations of section 2518(4) are not substantial where the sub-stantive requirements of the statute were actually met. *See United States v. Lawson,* 545 F.2d 557, 562 (7th Cir.1975) ("We merely find that the drastic remedy of suppression is not required where this technical violation occurs and the general purpose of the statute has been preserved."), *cert. denied,* 424 U.S. 927, 96 S.Ct. 1141, 47 L.Ed.2d 337 (1976); *United States v. Vento,* 533 F.2d 838, 861. (3rd Cir.1976) (same). For example, the courts have declined to suppress orders which technically indicate that approval was obtained from an Assistant Attorney General where, in fact, the Attorney General has personally authorized the application. *See United States v. Chavez,* 416 U.S. at 569, 94 S.Ct. at 1853; *Vigi,* 515 F.2d at 293; *United States v. Joseph,* 519 F.2d 1068 (5th Cir. 1975), *cert. denied,* 424 U.S. 909, 96 S.Ct. 1103, 47 L.Ed.2d 312 (1976); *United States v. Doolittle,* 507 F.2d at 1371 (holding that there was substantial compliance with the statute and the failure to name other defendants does not render the evidence obtained as to them inadmissible under section 2518[10][a] ).[4]

In determining whether there has been an actual violation of the substantive statutory requirements, courts construe the orders as a whole, including reference to the applications and affidavits. For example, in *United States v. Tortorello,* 480 F.2d 764 (2nd Cir.1972), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973), the conversations to be intercepted and the offenses to which they related were not fully described within the four corners of the orders. The court noted that particularity in a wiretap application and order is critical to the constitutionality of a surveillance. Although the court noted that it would have been better if the judge had stated in the orders themselves more precisely what those authorized to execute the orders were entitled to overhear and record, the court held that the *papers as a whole,* including especially those portions of the application which recite facts intended to establish probable cause, were sufficiently particular. *Id.* at 780. A restatement of what was contained within the application papers therefore was not essential. *See United States v. Traitz,* 871 F.2d 368 (3rd Cir.1989) (in determining whether judge properly performed his function, it was not order which had to be examined, but rather, application and affidavit which were submitted in support of interception order), *cert. denied,* 493 U.S. 821, 110 S.Ct. 78, 107 L.Ed.2d 44 (1989). *See also United States v. Ford,* 553 F.2d 146 (D.C.Cir.1977).

In *Traitz,* the court found that although the order was missing a page, the order was not facially insufficient. The court reasoned that other sections of the order effectively identified the FBI as the agency authorized to intercept oral communications. Although the order did not specify the agency pursuant to the requirements of section 2518(4)(d), the order directed that "Bell Telephone ... furnish ·the Federal Bureau of Investigation

---

**4.** Consistent with these decisions, courts have found orders facially invalid where there was an actual violation of the substantive provisions of the statute. *See, e.g., United States v. Boone,* 499 F.2d 551 (4th Cir.1974) (suppressing evidence where order indicated authorization had been given by acting Assistant Attorney General); *United States v. Lamonge,* 458 F.2d 197 (6th Cir.) (absence of date from order rendered orders invalid because of indefinite duration and failed

to comply with section 2518(4)(e)), *cert. denied,* 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972); *United States v. Ceraso,* 355 F.Supp. 126, 128 (M.D.Pa.1973) (where order was inadvertently not signed, wiretap was illegal, since omission of judge's signature was not a clerical error). *Cf. Vigi,* 515 F.2d at 293 (holding that acting Assistant Attorney General had all the powers and obligations of the position; therefore suppression was not required).

such information ... as are [sic] necessary to accomplish the oral interception...." *Traitz,* 871 F.2d at 378. The court adopted the district court's reasoning that "logic dictates that if the order directs the Bell Telephone Company to assist the FBI with the interception, then the FBI is the agency authorized to intercept." *Id.*

In this case, if I construe the orders as a whole, including reference to the application and affidavit, it is apparent that the identification requirement of section 2518(4)(a) has, in fact, been met. Not only do the order sections refer to the "above-named" persons identified in the finding sections, but the affidavit and application clearly name those persons whose conversations are to be intercepted. Indeed, the affidavits contain the precise information which, according to defendants, should have appeared in the order sections.

Defendants resist this conclusion by suggesting that I may not construe the orders as a whole, but must only look to the order sections to determine if there was compliance with section 2518(4)(a). Defendants do not point to any authority which indicates that the identification of persons must be contained within the directive part of the order sections. Such a strict construction of the requirements of the statute cannot be found in either the language of the statute itself or in the legislative history. In fact, treatment by the courts of the findings section of orders suggests that defendants' strict construction is untenable. Although the judge is required by the statute to make certain findings under section 2518(3), courts have held that nothing in the language of section 2518(3) compels the judge to set forth the required findings in writing. "There is nothing in § 2518(3)(c) which requires that particular words be used in the requisite findings or indeed that the finding be actually expressed in words rather than by act of the judge." *United States v. Tortorello,* 342 F.Supp. 1029, 1036 (S.D.N.Y.

1972), *aff'd,* 480 F.2d 764 (2nd Cir.), *cert. denied,* 414 U.S. 866, 94 S.Ct. 63, 38 L.Ed.2d 86 (1973). *See also United States v. Escandar,* 319 F.Supp. 295, 304 (S.D.Fla.1970) ("Section 2518(3) requires only that the authorizing judge make a determination that normal investigative procedures have been tried and appear likely to fail. There is no specific mandate that such determinations be reflected in the written order."). *Cf. United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) ("Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve as merely a rubber stamp for the police."). Given the lenient treatment by the courts of the findings section of the order, I find defendants' restrictive interpretation extremely attenuated.

According to defendants, if I do read the orders as a whole and assume that the individuals named in the findings sections of the orders are the "above-named" persons, then I would still reach an inappropriate result. In support of defendants' position, defendants point to the order for 92–WT–14, which includes Ms. Ellen Roy's name in paragraph "b" of the probable cause findings. Ms. Ellen Roy was apparently the subscriber to the telephone line which the Government wished to monitor. No probable cause findings exist concerning Ms. Roy,[5] but, because the order section only refers to "the above-named" persons, it would appear that Ms. Roy would be included as a "named-interceptee." Defendants contend that because Ms. Roy would be included as an "above-named" person, I cannot conclude that section 2518(4)(a) has been met by referring to the persons listed in the findings section of the order.

I disagree. Although Ms. Roy could be considered an "above-named" person, it is clear from the context of the findings section that Ms. Roy was merely the subscriber to the specified phone line. Even if it were not

---

5. It should be noted that the Government had no duty to establish probable cause as to each interceptee. It was sufficient that there was probable cause to tap the phone. *United States v. Nunez,* 877 F.2d 1470, 1472 (citing *United States v. Figueroa,* 757 F.2d 466, 470–71 [2nd Cir.1985], *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88

L.Ed.2d 100 [1985] ); *United States v. Diltz,* 622 F.2d 476, 482–83 (1980); *United States v. Russo,* 527 F.2d 1051, 1056 (10th Cir.1975). Consequently, it is conceivable that the Government could argue Ms. Roy *was* a "named-interceptee" without affecting the validity of the order.

clear from the context of the order, the affidavit which was attached to the application *lists* those persons who were the targets of the wiretap. Ms. Roy's name does not appear on this list. Construing the documents together, it is apparent that Ms. Roy was not a target of the wiretap. In addition, there is no indication that the agents failed to minimize Ms. Roy's conversations or any suggestion whatsoever that Ms. Roy's rights were abridged, assuming the agents read the order to include Ms. Roy. In fact, there is no suggestion by defendants that the agents, in fact, read the order to include Ms. Roy. Consequently, there is no evidence that there was an *actual* violation of the substantive terms of the statute. Defendants instead contend that the hypothetical scenario whereby Ms. Roy might have been considered a "named-interceptee" renders the order facially invalid. Given that defendants bear the burden of demonstrating the invalidity of a wiretap order, reliance on this hypothetical scenario is insufficient. This is particularly true in light of the tendency by the courts to determine "compliance" with title III by looking to see if there was an *actual* violation of the substantive terms of the statute. Construing the orders as a whole, together with the applications and affidavits, I find that the identification requirement of section 2518(4)(a) was, in fact, met.

 Assuming *arguendo* that there was, in fact, an actual violation of the statutory requirements, the orders would still not be considered invalid unless the requirement which was violated "directly or substantially implements Congress' expressed desire to restrain law enforcement's resort to or judicial authorization of the wiretap procedures." *Giordano,* 416 U.S. at 527, 94 S.Ct. at 1832. The requirement which was not observed must serve a central purpose in title III's overall statutory scheme before suppression will be ordered.

In *United States v. Baynes,* 400 F.Supp. 285 (E.D.Pa.1975), *aff'd,* 517 F.2d 1399 (3rd Cir.1975), the court held that failure to include provisions regarding minimization and execution as soon as practicable did not render the order invalid. Relying on the legisla-

tive history of section 2518(5), the court stated, "the requirement of inserting language regarding minimization and execution as soon as practicable does not play a central role in the statutory scheme to limit and control electronic surveillance," nor does the requirement "directly and substantially implement the congressional intention to limit the use of intercept procedures." *Id.* at 307 n. 37. *See United States v. Todisco,* 667 F.2d 255, 259 (2nd Cir.1981) (district court's finding of fact that a date on the order authorizing the wiretap was a ministerial error and therefore insignificant was not a clearly erroneous finding), *cert. denied,* 455 U.S. 906, 907, 102 S.Ct. 1250, 1251, 71 L.Ed.2d 444 (1982); *United States v. Acon,* 513 F.2d 513, 518 (3rd Cir.1975) ("Suppression is not required for facial insufficiency relating to less critical requirements which may be varied by subsequent affidavits. The identification directives of section 2518(4)(d) in our opinion fall within this category. In such a situation, suppression will not be required where there was substantial compliance with the statute."); *United States v. Cirillo,* 499 F.2d 872 (2nd Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974) (where minimization provision was omitted, suppression was not justified since provision was not central and agents had minimized of their own accord); *United States v. Kirkland,* 705 F.Supp. 1572 (M.D.Ga.1989) (ambiguity in the language required by section 2518[5] is not a violation so central to the statutory scheme as to render order invalid), *aff'd,* 893 F.2d 1342 (11th Cir.1989). *See Ford,* 553 F.2d at 155. Thus, even assuming that the orders violate section 2518(4)(a), the question to be determined is whether section 2518(4)(a) is a central provision in the statutory framework of title III.

### C. Is the Identification Requirement of Section 2518(4)(a) Central?

Title III requires the naming of a person in the application or interception order only when the law enforcement authorities have probable cause to believe that the individual is 'committing the offense' for which the wiretap is sought. *United States v. Kahn,* 415 U.S. 143, 153, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974) (holding that the failure

to name a person whose existence and likely use of the telephones were known did not justify suppression where that person's criminal involvement was unknown). *See United States v. Figueroa,* 757 F.2d 466, 471 (2nd Cir.), *cert. denied,* 474 U.S. 840, 106 S.Ct. 122, 88 L.Ed.2d 100 (1985); *United States v. DeJesus,* 887 F.2d 114, 116 (6th Cir.1989); *Doolittle,* 507 F.2d at 1373. Whether the failure to specify the identities of *any* person for whom probable cause existed renders the orders facially insufficient appears to be an issue of first impression. However, the failure to name *all* defendants for whom probable cause existed in the *application* has been addressed by the Supreme Court. In *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Court held that "a wiretap *application* must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone." *Donovan,* 429 U.S. at 427, 97 S.Ct. at 668 (emphasis added).

However, according to *Donovan,* the failure to comply "fully" with section 2518(1)(b)(iv) does not render unlawful an intercept order that in all other respects satisfies the statutory requirements. *Id.* 429 U.S. at 433–34, 97 S.Ct. at 671. In reaching this conclusion, the Court reasoned that "if, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization." *Id.* 429 U.S. at 433–34, 97 S.Ct. at 671. In *dicta,* the *Donovan* court further noted that nothing in the legislative history suggests that Congress intended this broad identification requirement to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *See Chavez,* 416 U.S. at 578, 94 S.Ct. at 1857. The Court found that the statutorily imposed preconditions to judicial authorization were satisfied, and the issuing judge was simply unaware that additional persons might be overheard engaging in incriminating conversations.

The Tenth Circuit has confronted the issue of whether, under section 2518(10)(a)(i), evidence obtained from a wiretap where the Government failed to name a defendant in its *application* must be suppressed. In *Diltz,* 622 F.2d at 476, the court held that suppression was not required since there was no probable cause to include the defendants' names in the order. Therefore, the failure to include their names did not render the order void. However, the court noted in *dicta* that where probable cause does exist as to a particular individual, that individual must be named in the application and order. *Diltz,* 622 F.2d at 479–80. *See Russo,* 527 F.2d at 1056 (same conclusion, although pre-*Donovan* ); *United States v. Picone,* 560 F.2d at 998 (reversing suppression despite failure to identify in application defendant for whom probable cause existed pursuant to *Donovan* ). In *United States v. Armendariz,* 922 F.2d 602 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 87, 116 L.Ed.2d 59 (1991), the Tenth Circuit applied the holding of *Donovan* and found that all of the requisite statutory factors necessary to support the authorization were present, and that the failure to name defendant "in no way detracts from the sufficiency of those factors." *Armendariz,* 922 F.2d at 608 (quoting *Donovan,* 429 U.S. at 435, 97 S.Ct. at 672).

Every court of appeals that has considered the issue has concluded that an individual whose conversations probably will be intercepted by a wiretap must be identified in the wiretap application and order if the law enforcement authorities have probable cause to believe the individual is committing the offense for which the wiretap is sought. *See United States v. Alfonso,* 552 F.2d 605, 613–15 (9th Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 398, 54 L.Ed.2d 279 (1977); *United States v. Baker,* 589 F.2d 1008 (9th Cir.1979); *United States v. Civella,* 533 F.2d 1395 (8th Cir.1976); *Doolittle,* 507 F.2d at 1368; *United States v. Chiarizio,* 525 F.2d 289, 292 (2nd Cir.1975). *See also United States v. Rotchford,* 575 F.2d 166, 173 (8th Cir.1978) (if the Government has probable cause to believe that the communications of a person will be

intercepted, it is the duty of the Government to identify in the application for the wiretap and see to it that he is identified in the authorizing order). However, in each of these cases, the courts found that suppression was not justified since the applications and orders named some, but not all, of the persons for whom probable cause was shown. This court has been unable to locate a case where no person was named in the order, despite the fact that probable cause existed as to at least four defendants. *Donovan*, read in conjunction with the other circuit court authorities, suggests that the naming requirement in the context of the *application* is simply not a provision central to title III. An extrapolation of this analysis suggests that the identification requirement in the *order section* would similarly not play a central role in the statutory framework of title III.

Defendants attempt to distinguish *Donovan* and the other decisions on two grounds. First, defendants maintain the order is distinct from the application. According to defendants, the order is distinct from the application because the order itself is what is given to the agents at the listening posts and is what the agents refer to when determining who may be legally intercepted and whose conversations must be minimized. If no one is named in the order sections, defendants argue, the minimization requirement is nullified, since the order effectively authorizes interception of all conversations from the tapped phone lines.

Defendants' argument misapprehends the nature of the minimization requirement; indeed, it appears that defendants have it exactly backwards. The statute simply requires (and the orders here provide) that the intercept "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter." 18 U.S.C.A. § 2518(5) (West Supp.1993). If the order sections had specifically identified the persons whose conversations were to be intercepted, their very status as named interceptees would surely affect the court's analysis of whether the surveillance agents minimized interceptions of their conversations, for the agents would be permitted more flexibility in intercepting

conversations of named interceptees as to whom probable cause had already been established. Contrariwise, minimization as to persons not named would require agents to terminate an intercept at an early point, unless the conversation had some connection to the criminal activity under investigation. In short, failure to identify a person as a named interceptee requires more rigorous efforts at minimization of the person's conversations, not (as defendants contend) less. Consequently, under these orders, assuming no one was named, *all* conversations should have been minimized. Agent Tommy Ross testified that the agents minimized the interception of conversations. The agents are only required to make reasonable efforts to minimize their interceptions in light of all the relevant circumstances. *Scott v. United States*, 436 U.S. 128, 139–141, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978). As I will discuss in more detail later, no defendant has adequately demonstrated that minimization as to their intercepted conversations was not reasonable. (*See* Minimization section below). I therefore disagree with defendants' contention that the failure to name persons in the order sections rendered the minimization requirement a nullity. On the contrary, the lack of names *required* minimization as to all conversations intercepted.

Second, defendants maintain the fact that no person was named in the order sections is different than simply not naming *all* persons in the order sections. However, the clear implication of the language of section 2518(4)(a) is that where there is probable cause to believe that a particular telephone is being used to commit an offense, but no particular person is identifiable, a wire interception order may, nevertheless, properly issue under the statute. Thus, the statute contemplates that the order might not name any specific party at all. *Kahn*, 415 U.S. at 155, 94 S.Ct. at 984. In fact, the Senate rejected an amendment to title III which would have provided that only the conversations of those specifically named in the wiretap order could be admitted into evidence. *See* 114 Cong.Rec. 14718 (1968) (Amendment 735). Under defendants' analysis, such an order would be invalid because it would "nullify" the minimization requirement. Given

that the Supreme Court has expressly suggested that such an order *would* be valid under the statute, defendants' contention that the orders in this case are invalid is unpersuasive. I conclude, in light of the circumstances of this case, that the failure to name any persons in the order sections does not amount to a substantial violation of a central provision of the statute.

### D. *Suppression as the Remedy*

The remedy of suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Donovan*, 429 U.S. at 433, 97 S.Ct. at 671; *Giordano*, 416 U.S. at 527, 94 S.Ct. at 1832 (1974). *See United States v. Santarpio*, 560 F.2d 448, 454 (1st Cir.1977) (failure to name a person for whom probable cause existed does not require suppression where application provided sufficient information to enable issuing judge to determine the statutory preconditions were satisfied), *cert. denied*, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977). Since I find that the failure to name persons in the order sections does not amount to a substantial violation, given that persons *are* named in the findings sections of the orders, I conclude suppression is not justified.

■ In addition, contrary to defendants' assertion, courts have held that a showing of bad faith or prejudice is required in order to justify suppression. *See Baker*, 589 F.2d at 1011; *Rotchford*, 575 F.2d at 173; *De La Fuente*, 548 F.2d at 538; *Doolittle*, 507 F.2d at 1371; *United States v. Cantu*, 625 F.Supp. 656 (N.D.Fla.1985), *aff'd*, 791 F.2d 940 (11th Cir.1986). *See also Kilgore*, 524 F.2d at 959 (unless Government had procured application in bad faith, or unless defendant was prejudiced by the omission of his name, suppression was not justified). Defendants neither suggest that the Government acted in bad faith in failing to name persons in the order sections, nor identify any prejudice which they have suffered as a result of this omission.

■ Finally, defendants urge that the failure to name any persons in the order sections amounts to a general warrant which is proscribed by the Fourth Amendment. However, in *Donovan*, the Court noted that in the wiretap context, the Fourth Amendment requirement of specification of "the place to be searched, and the persons or things to be seized" was satisfied by identification of the telephone line to be tapped and the particular conversations to be seized. "It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named." *Donovan*, 429 U.S. at 427 n. 5, 97 S.Ct. at 668 n. 15. As long as the property to be seized is described with sufficient specificity, even a warrant failing to name the owner of the premises at which a search is directed, while not the best practice, has been held to pass muster under the Fourth Amendment. *Kahn*, 415 U.S. at 154, 94 S.Ct. at 983. *United States v. Fiorella*, 468 F.2d 688, 691 (2nd Cir.1972) ("The Fourth Amendment requires a warrant to describe only 'the place to be searched, and the persons or things to be seized,' not the persons from whom things will be seized."), *cert. denied*, 417 U.S. 917, 94 S.Ct. 2622, 41 L.Ed.2d 222 (1974). *See Figueroa*, 757 F.2d at 471 (wiretap order which does not specify every person whose conversations may be intercepted does not per se amount to a "virtual general warrant" in violation of the Fourth Amendment). Thus, I cannot conclude that the failure to name person in the order sections abrogates the Fourth Amendment's proscription against generalized warrants.

### E. *Conclusion*

■ The case law concerning the facial sufficiency of wiretap orders suggests the following conclusion: A wiretap order must specify (1) that a particular phone line has been and probably will continue to be used in connection with illegal activities; (2) that the application was authorized by the Attorney General or her designated assistant; and (3) that other more traditional methods of investigation either have proven to be ineffective or would be ineffective. Where a wiretap order contains these three

elements, it sufficiently complies with the substantive provisions of title III to be considered a valid order. Including the names of persons who are suspected of engaging in the illegal activities goes not to the validity, but to the *scope* of the order. Where persons for whom probable cause exists are named, the extent of the monitoring of their conversations is broader than if they were not named. However, where no persons are specifically named, the order would nonetheless be valid, although interception of conversations of all persons would need to be minimized. Therefore, I conclude that the failure of the wiretap orders in this case to specifically name persons for whom probable cause existed in the directive sections of the orders does not invalidate wiretap orders which in all other respects meet the substantive requirements of title III. The alleged facial invalidity of the orders does not mandate suppression.

## II. Necessity of Wiretap

█ Section 2518(3)(c) requires the judge to determine on the basis of the facts submitted by the applicant that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C.A. § 2518(3)(c). The purpose of section 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but rather to inform the issuing judge of the difficulties involved with the conventional techniques and to ensure that wiretapping is not resorted to in situations in which traditional investigative techniques would suffice. *See United States v. Webster,* 734 F.2d 1048 (5th Cir.1984), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *United States v. Johnson,* 645 F.2d 865, 876 (10th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981); *United States v. Clements,* 588 F.2d 1030 (5th Cir.1979), *cert. denied,* 440 U.S. 982, 99 S.Ct. 1792, 60 L.Ed.2d 243 (1979); *United States v. McCoy,* 539 F.2d 1050 (5th Cir.1976), *cert. denied,* 431 U.S. 919, 97 S.Ct. 2185, 53 L.Ed.2d 230 (1977); *United States v. Smith,* 893 F.2d 1573 (9th Cir.1990); *Nunez,* 877 F.2d at 1472. *See*

*also Armendariz,* 922 F.2d at 606 ("Wiretapping statutes are not designed to force the Government to exhaust all conceivable investigative procedures before resorting to wiretapping. Although it should not be used routinely as the first step in a criminal investigation, it need not be the last resort."); *United States v. Harvey,* 560 F.Supp. 1040, *aff'd,* 789 F.2d 1492, *cert. denied,* 479 U.S. 854, 855, 886, 107 S.Ct. 190, 192, 279, 93 L.Ed.2d 123, 124, 255 (1986) (more traditional techniques need not be exhausted if they are impractical, costly, or inconvenient).

█ The Government's burden of showing that other procedures reasonably appear unlikely to succeed or that they are too dangerous to use is not great. *United States v. Askins,* 351 F.Supp. 408 (D.Md. 1972). The necessity requirement must be read in a common sense fashion to effectuate the congressional purpose of granting some investigative discretion. *Nunez,* 877 F.2d at 1472. Substantial compliance with the statute is all that is required. *U.S. v. Falcone,* 364 F.Supp. 877 (D.N.J.1973). In determining whether the Government has substantially complied with the necessity requirement, it is appropriate to look both to the applications and the affidavits submitted with them. *Armendariz,* 922 F.2d at 606; *Falcone,* 364 F.Supp. at 885; *Baker,* 589 F.2d at 1010; *Lawson,* 545 F.2d at 563.

With regard to 92–WT–12, the affidavit submitted with the application of October 26, 1992, states that routine investigative techniques had been unsuccessful in conclusively identifying (1) other purchasers, (2) Mills' source and method of delivery for cocaine, and (3) the manner in which he concealed the profits of cocaine sales. *Affidavit of Tommy E. Ross and Robert Simmons* ¶ 49 (filed Oct. 26, 1992). Investigators believed that Mills would not introduce undercover officers to his suppliers; that the informant could not provide additional information; that physical surveillance of Mills might jeopardize the investigation; and that additional pen registration and toll information would not provide sufficiently specific information. *Id.* ¶¶ 50–57.

The affidavit submitted with the application of November 25, 1992, for an extension of 92–WT–12 reiterates the limited success of standard investigative techniques cited in the initial application. *Affidavit of Tommy E. Ross and Robert Simmons* ¶ 28 (A)–(G) (filed Nov. 25, 1992). In addition, the application for extension cites the limited use of police records in ascertaining current criminal activities and the prematurity of a search warrant at the time of the application. *Id.* ¶ 28 (H) and (I). The affidavit further states that evidence gathered by the time of the application related primarily to Mills and was not sufficient as to other suspected members of the organization. *Id.* ¶ 29 (filed Nov. 24, 1992).

With regard to the application for 92–WT–14, the November 20, 1992, affidavit states that pen register and toll information was insufficient to disclose the nature and extent of the relationship between the Bennetts and others suspected of controlled substance violations. *Affidavit of Tommy E. Ross and Robert Simmons* ¶ 37 (filed Nov. 20, 1992). The affidavit stated that the Bennetts took steps to disguise their narcotics trafficking activities and that investigators did not believe they would be able to gather information about the Bennetts' sources and other possible conspirators without a wiretap. *Id.* ¶¶ 32, 39.

With regard to the December 24, 1992, application for an extension of 92–WT–14, the affidavit repeats concerns about the limited usefulness of standard investigative techniques offered in the previous applications. *Affidavit of Tommy E. Ross and Robert Simmons* ¶¶ 29–38 (filed Dec. 24, 1992). In addition, the affidavit states that investigators believed the wiretap was the only method whereby they might identify the full scope of the narcotics operation and all of the participants. *Id.* ¶ 39.

According to Defendant Tyrous Mills, much of the information sought by the wiretaps, particularly their extensions, was already known to the Government prior to the applications. However, as the Government argues, the normal investigative techniques showed little promise of penetrating the tightly woven cocaine distribution organiza-tion. *Government's Consolidated Response to Defendants' Motions to Suppress Intercepted Communications* at 6 (filed May 12, 1993) [hereinafter *Government's Response*]. Although "other investigative measures had already been utilized … there was a need for more information regarding the scope of the conspiracy." *Nunez,* 877 F.2d at 1472. Specifically, the Government sought to identify not only the lower levels of the conspiracy, but also the Bennetts' suppliers. *Government's Response* at 7. Where the investigation focuses on the identification of members and scope of a conspiracy, a wiretap is justified. *United States v. Newman,* 733 F.2d 1395, 1399 (10th Cir.1984); *Nunez,* 877 F.2d at 1472. Given the nature of the case, I find that the affidavits submitted in support of the applications for both orders and their extensions sufficiently allege the necessity of the wiretaps.

■ Finally, although defendants cite language indicating that a "boilerplate recitation of the difficulties of gathering usable evidence" cannot suffice, (*see, e.g., United States v. Leavis,* 853 F.2d 215, 220 [4th Cir. 1988] ), defendants do not suggest that the statements contained in the affidavits constitute "boilerplate" allegations. Defendants do not cite to any authority which suggests that where the affidavit contains detailed allegations but the application or order merely uses a "boilerplate" recitation, that the necessity requirement has not been met. On the contrary, a judge issuing an intercept order may rely on stereotyped recitals in a wiretap application in determining that other investigative techniques reasonably appear to be unlikely to succeed if tried. *United States v. Bilbo,* 240 Ga. 601, 242 S.E.2d 21 (1978). In fact, courts have held that it is not necessary for the judge's determination of necessity to be included in the order. *See, e.g., United States v. Escandar,* 319 F.Supp. 295 (D.C.Fla.1970). I find the affidavits adequately alleged the necessity of the wiretaps and their extensions.

### III. Delay in Sealing

■ According to defendants, the tapes from telephone number (303) 368–0272 for 92–WT–12 should be suppressed since they

were not sealed "immediately" in accordance with section 2518(8)(a). Instead, the tapes were not sealed until after a five-day and 13–day delay. Interception of (303) 368–0272 terminated on Thursday afternoon, December 24, 1992. Due to the holiday·weekend, the first business day after termination was Monday, December 28, 1992. The tapes were sealed on December 29, 1992—five days after the wiretap terminated. The determination of whether a delay was insignificantly long depends on the circumstances and is a question of fact. *United States v. Carson,* 969 F.2d 1480 (3rd Cir.1992). Given the intervening holiday weekend, I find that the tapes which were sealed on December 29, 1992, were timely sealed in accordance with the requirements of section 2518(8)(a).

■ However, after the December 29, 1992, sealing, FBI personnel discovered that nine additional tapes had been inadvertently overlooked. On January 6, 1993, the court sealed those tapes. Title III requires that the Government provide a "satisfactory explanation" as to why recordings of intercepted communications were not placed under seal immediately upon expiration of authorization for interception. The Government must explain not only why a delay occurred but also why it is excusable. *United States v. Ojeda Rios,* 495 U.S. 257, 110 S.Ct. 1845, 109 L.Ed.2d 224 (1990). I agree that the Government must explain this delay.

According to the Government, the nine tapes were taken from the listening post along with the other tapes. All tapes were held in a secure location within the FBI offices in Denver. The nine tapes did not leave this secured area until they were sealed. The Government maintains the integrity of these nine tapes was not affected by the delay in sealing.

Although defendants refer to one case not in this circuit which suggests a two-day delay was unjustified, the majority of cases examining the question have found a much longer time period to be excusable. *See United States v. Maldonado–Rivera,* 922 F.2d 934 (2nd Cir.1990), *cert. denied,* —— U.S. ——, ——, 111 S.Ct. 2811, 2858, 115 L.Ed.2d 984 (1991) (19–day delay); *United States v. Diana,* 605 F.2d 1307 (4th Cir.1979) (39–day

delay), *cert. denied,* 444 U.S. 1102, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980); *United States v. Angelini,* 565 F.2d 469 (7th Cir.1977) (nine-to 26–day delay), *cert. denied,* 435 U.S. 923, 98 S.Ct. 1487, 55 L.Ed.2d 517 (1977); *United States v. Poeta,* 455 F.2d 117 (2nd Cir.1972), *cert. denied,* 406 U.S. 948, 92 S.Ct. 2041, 32 L.Ed.2d 337 (1972) (13–day delay); *United States v. Pedroni,* 958 F.2d 262 (9th Cir.1992) (14–day delay); *United States v. Sklaroff,* 506 F.2d 837 (5th Cir.1975) (14–day delay); *United States v. Riggi,* 737 F.Supp. 1410 (D.N.J.1990) (five- and seven-month delay).

■ Suppression for failure to seal tapes immediately depends on (1) whether the particular procedure is a central or functional safeguard in the statutory scheme to prevent abuses, (2) whether the purpose which the particular procedure was designed to accomplish has been satisfied in spite of error, and (3) whether the statutory requirement was deliberately ignored. *Diana,* 605 F.2d at 1311. Congress' primary purpose in legislating the requirement of sealing tape recordings was to guard recordings from editing or alteration and to maintain confidentiality of the recordings. *See United States v. Mendoza,* 574 F.2d 1373 (5th Cir.1978), *cert. denied,* 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978); *Angelini,* 565 F.2d at 473; *Poeta,* 455 F.2d at 117; *United States v. McGrath,* 622 F.2d 36 (2nd Cir.1980). Absent evidence that the integrity of the tapes was affected or that defendant suffered prejudice by the delay, the failure to seal the tapes immediately does not necessitate suppression. *U.S. v. Falcone,* 505 F.2d 478 (3rd Cir.1974). *See Lawson,* 545 F.2d at 557 (57–day delay excusable since purpose of statute, to insure the integrity of tapes, was accomplished); *United States v. Mora,* 623 F.Supp. 354 (D.C.Mass.1985), *aff'd,* 821 F.2d 860 (1st Cir. 1957) (20- and 41–day delay did not require suppression where it was not in bad faith, defendants were not prejudiced, and no tactical advantage accrued to Government).

Defendants have neither indicated that the integrity of the tapes was jeopardized, nor identified any prejudice which they have suffered as a result of this delay. Accordingly, I find that the 13–day delay in sealing the

nine tapes was excusable and does not warrant suppression.

## IV. Probable Cause

 "Probable cause is established by the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information, which facts are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed by the putative defendant." *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925). The probable cause required for the issuance of a wiretap order is the same as that which is necessary to obtain the issuance of a warrant for a physical search. *Baynes,* 400 F.Supp. at 285. A "totality of the circumstances" test is applicable to the finding of probable cause. *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *United States v. Pettit,* 903 F.2d 1336 (10th Cir.), *cert. denied,* 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 159 (1990). In this case, the agents had ample probable cause, both for the initial orders and their extensions.

According to the affidavit submitted with the initial application for 92–WT–12 (filed October 26, 1992), an informant and Denver Police Department Detective Simmons purchased cocaine directly from Defendant Tyrous Mills ("Mills") on several occasions. *Affidavit of Tommy E. Ross and Robert Simmons* ¶¶ 13–15 (filed Oct. 26, 1992). Total purchases from Mills spanned a period of several months and amounted to over a half pound of cocaine at a cost of approximately $10,000. *Id.* ¶¶ 19, 21, and 24.

With regard to the extension for 92–WT–12 (filed November 25, 1992), the affidavit lists numerous telephone conversations relating to cocaine transactions. In particular, in the conversation of October 30, 1992, Mills discussed the loss of $58,000, believed by investigators to be the money seized when Defendants Diane and Calvin Bennett allegedly attempted to purchase three kilograms of cocaine from an undercover officer. *Affidavit of Tommy E. Ross and Robert Simmons* ¶ 16(c) (filed Nov. 25, 1992). On November 9, 1992, Mills discussed with Detective Simmons the possible purchase of a quarter kilogram of cocaine. *Id.* ¶ 23(a). On November 12, 1992, Mills telephoned the Bennett residence to inform the Bennetts that he had been robbed of a quarter kilogram of cocaine at gunpoint. *Id.* ¶ 26(g) and (h).

With regard to the application for 92–WT–14, according to the supporting affidavit, 159 calls were placed between Mills and the Bennetts during the period from October 26, 1992, to November 11, 1992. *Affidavit of Tommy E. Ross and Robert Simmons* ¶ 27(a) (filed Nov. 20, 1992). Investigators intercepted numerous calls relating to drug distribution and sales. *Id.* ¶ 29. The affidavit also states that the Bennetts' activities generated large cash profits demonstrated by the loss of $88,000 in failed deals. *Id.* ¶ 17.

Regarding the application for the extension of 92–WT–14, the December 24, 1992, affidavit states that during the period for which the initial interception was authorized, investigators monitored numerous conversations relating to the ongoing sale and distribution of narcotics. *Affidavit of Tommy E. Ross and Robert Simmons* ¶¶ 12–25 (filed Dec. 24, 1992). A conversation between Diane Bennett and Mills about profits and the loss of a quantity of cocaine, *Id.* ¶ 22(c), and another conversation related to a trip by Diane Bennett to meet her cocaine supplier, *Id.* ¶ 25(a), are among the telephone calls cited by the affidavit in support of probable cause. Based on the allegations contained in these affidavits, I find there was ample probable cause to believe there was an ongoing conspiracy to distribute cocaine in conjunction with the use of the two telephone lines.

## V. Failure to Minimize

 Minimization is required by section 2518(5) which provides that "every order and extension thereof ... shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception." Section 2518(5) does not require that all innocent conversations be left untouched. "It merely provides that unnecessary intrusions be minimized, or reduced to the smallest degree possible." *United States*

v. *Clerkley*, 556 F.2d 709, 715 (4th Cir.1977), *cert. denied*, 436 U.S. 930, 98 S.Ct. 2830, 56 L.Ed.2d 775 (1978). In order to determine whether the Government properly minimized interception of conversations, a test of reasonableness is applied to the particular facts of each case. *Scott*, 436 U.S. at 139–40, 98 S.Ct. at 1724–25.

In analyzing a given case, the factors to be considered in determining whether minimization was reasonable are: (1) the nature and scope of the criminal enterprise under investigation; (2) the government's reasonable inference of the character of a conversation from the parties to it; and (3) the extent of judicial supervision. *United States v. Armocida*, 515 F.2d 29, 44–45 (3rd Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975); *United States v. Hyde*, 574 F.2d 856, 862 (5th Cir.1978).

Where the Government is investigating a widespread conspiracy, as it was here, it is appropriate for monitoring agents to monitor calls more extensively than might have been appropriate in a simpler case. *Hyde*, 574 F.2d at 869. *See Clerkley*, 556 F.2d at 716 ("Investigation of conspiracies may necessitate the interception of all or almost all communications"). Moreover, where the suspects use a specialized code or jargon, a greater degree of monitoring is permissible. *See, e.g., United States v. James*, 494 F.2d 1007, 1019 (D.C.Cir.), *cert. denied*, 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974); *United States v. Cox*, 462 F.2d 1293 (8th Cir.1972), *cert. denied*, 419 U.S. 885, 95 S.Ct. 156, 42 L.Ed.2d 129 (1974); *United States v. Willis*, 890 F.2d 1099 (10th Cir.1989); *Armocida*, 515 F.2d at 44; *Clerkley*, 556 F.2d at 717; *Cantu*, 625 F.Supp. at 675; *Falcone*, 364 F.Supp. 877. In addition, at the early stages of an investigation, the agents may need to listen for longer periods in order to determine the identities of the speakers and the significance of the conversations. *Scott*, 436 U.S. at 141, 98 S.Ct. at 1725. Only three defendants specifically allege that their conversations were not minimized: Calvin Bennett, Sharon Dixon, and Naomi Mills.

Defendant Calvin Bennett claims 442 calls on (303) 368–0272 were not properly minimized. *See Submission of Additional Ex-*

*hibit to Addendum to Motion to Suppress Intercepted Communications (Regarding Failure of Court Order to Name Persons Authorized to be Intercepted)* at 1 (filed June 11, 1993). However, as the Government documents, of the 442 calls, 259 (almost 60 percent) lasted less than two minutes. Of the 26 calls which lasted three minutes or less, some were minimized on or before the two-minute mark. Twelve calls were deemed pertinent, so minimization was not required. All but four of the remaining calls were minimized or were subject to periodic "spot" minimization. The four calls (nos. 27, 158, 906, and 2030) which were not properly minimized constitute less than one percent of the total calls cited by defendant. *See Government's Consolidated Response to Defendants' Motions to Suppress Based Upon Improper Minimization* at 1–2 (filed June 25, 1993) [hereinafter *Government's Response to Minimization*].

Defendant Bennett also challenges 118 calls on (303) 766–3096. Over 80 percent (91) of these calls lasted less than two minutes. One call was deemed "possibly" pertinent. The remaining calls, save for two, were minimized or "spot" minimized during the conversation. Of the two calls which were not minimized, one lasted three minutes and the other lasted five minutes. *Government's Response to Minimization* at 3–5.

Defendant Sharon Dixon avers that there are several examples of conversations which were monitored entirely but were not related to the investigation. *See Renewed Motion to Suppress Based Upon Failure to Minimize* at 1 (filed June 10, 1993). Specifically, defendant challenges 10 calls. According to the Government, these calls were either too short to minimize; were deemed pertinent; or were not minimized because the agents were unable to determine whether they should be minimized before the calls ended. *Government's Response to Minimization* at 1–2.

Defendant Dixon was intercepted a total of seven times on (303) 368–0272. Only two calls lasted more than two minutes and both were minimized. Defendant was intercepted 55 times on (303) 766–3096. Only 19 of these calls lasted more than two minutes—16 of which were minimized. Of the remaining

three calls which were neither pertinent nor minimized, two lasted for only three minutes and the other lasted for seven minutes. *Id.* Consequently, of the 62 total interceptions of Defendant Dixon, only three calls (less than ½ percent) were not appropriately minimized.

Defendant Naomi Mills asserts that all conversation as to her were not properly minimized; however, she does not present any evidence in support of this generalized assertion. *See Motion to Join in Motions of Other Defendants* at 1–2 (filed May 7, 1993). Although the Government does not present statistics relating specifically to Naomi Mills, the Government clearly demonstrates that the overall minimization efforts were more than adequate. According to the Government, of the 2,450 total calls intercepted on (303) 368–0272, only 16 calls were nonpertinent, lasted more than two minutes, and were not minimized. This computes to roughly 1/100 of a percent. Of the approximately 1,619 total calls intercepted on (303) 766–3096, only four calls were nonpertinent, lasted more than two minutes, and were not minimized. This constitutes less than one percent of the total calls which should have been minimized. I find defendants' contention that pervasive overmonitoring in the overall execution of the warrants rendered all monitoring violative of a "general search" theory, *see United States v. Suquet,* 547 F.Supp. 1034, 1039 (N.D.Ill.1982), to be utterly unsubstantiated. I conclude that the Government has amply demonstrated that proper minimization took place with regard to all calls on both tapped lines.

Once the Government has made a prima facie showing of reasonable minimization, the burden shifts to defendants to show how more effective minimization could have taken place. *Willis,* 890 F.2d at 1102; *Armocida,* 515 F.2d at 45. Defendants have failed to point to any specific way in which more effective minimization could have taken place. ■ Although the Tenth Circuit in *Willis* did not foreclose the possibility that a transgression of the minimization requirements on a single call in some future case might be enough to establish a violation of the statute, the majority of courts have held that a pat-

tern of abuse is required to establish a violation of the minimization requirement. *See, e.g., United States v. Dorfman,* 542 F.Supp. 345, 391 (N.D.Ill.), *aff'd,* 690 F.2d 1217, 1230 (7th Cir.1982), *aff'd sub. nom. United States v. Williams,* 737 F.2d 594 (7th Cir.1985), *cert. denied,* 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *U.S. v. Lawson,* 780 F.2d 535, 540 (6th Cir.1985). Minimization only requires the government agents to exercise, in good faith, reasonable efforts to minimize the extent of those intrusions. Where a good faith reasonable effort has been made to minimize interceptions, interception is valid even though some nonpertinent calls are monitored. *Falcone,* 364 F.Supp. at 885. Understandable human lapses such as inattention on the part of the monitoring agents may explain the failure to minimize some nonpertinent conversations and do not violate minimization directive. *Cantu,* 625 F.Supp. at 656.

I find that despite the few conversations which were not properly minimized, the overall minimization directive was met. This conclusion is consistent with the approach taken towards the minimization requirement in this circuit. *See United States v. Cox,* 567 F.2d 930, 933 (10th Cir.1977), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1496, 55 L.Ed.2d 522 (1978) ("Courts should avoid adopting an overly restrictive interpretation of the minimization requirement which makes it impossible to use this device in connection with the investigation of organized criminal conspiracies."); *Willis,* 890 F.2d at 1102.

### VI. Technical Errors

■ Defendants suggest that various technical errors contained in the orders warrant suppression. First, Defendant Calvin Bennett argues that the extension order signed by Judge Babcock contains a typographical error. According to defendant, the extension order omits the words "is authorized." I find that this error is a clerical error which does not affect the validity of the order. Second, Defendant Tyrous Mills objects to the discrepancy in the dates on the orders. Defendant Mills does not demonstrate that he suffered any prejudice as a result of this clerical error. Again, I find

this to be a minor technical error which does not warrant suppression. Third, Defendant Sharon Dixon argues that her conversations should not have been intercepted since she was not named in the orders. Dixon argues that either (1) she was known and targeted prior to the application for the December 24, 1992, extension but was not named in the application or order, or (2) there was no probable cause to believe she was involved in this conspiracy. I believe *Donovan* and *Nunez* control these issues. Fourth, although many defendants allege generally that the wiretaps were not conducted in conformity with the orders, none of the defendants provides any specific allegations in support of this contention.

 Finally, Defendant Tyrous Mills argues for suppression on the ground that, when the Government applied to me for an extension of the wiretap in 92–WT–12, it failed to inform me that Judge Babcock had five days earlier issued the initial wiretap order in 92–WT–14. This failure, which the Government does not deny, is alleged to be a violation of section 2518(1)(e). Mills has not cited any case law supporting his position, and the Government has not even bothered to address the issue. I conclude that Mills' argument must fail, for two reasons. First, the requirement that a judge be informed of prior applications involving some of the same persons is not a provision which plays a "substantive role" in the regulatory system established by title III. *See United States v. Abramson,* 553 F.2d 1164, 1170 (8th Cir.1977) (citing *Donovan* ). *See also United States v. Mosko,* 654 F.Supp. 402, 406–07 (D.Colo. 1987), *aff'd sub nom. United States v. Pinelli,* 890 F.2d 1461, 1476 (10th Cir.1989). Contrary to Mills' contention, the requirement does not bear on the question of whether the subsequent wiretap is necessary, because the judge must determine only whether "normal investigative procedures have been tried," 18 U.S.C.A. § 2518(3)(c), not whether there was a previous wiretap.

Second, even if one could argue that the requirement may theoretically play some substantive role in the statutory scheme in certain cases, *see Mosko,* 654 F.Supp. at 408, I am satisfied, as the judge who issued the extension order without being informed of Judge Babcock's prior order, that complete disclosure of Judge Babcock's order would not have caused me to refuse the extension. In fact, it would have lent more support to the extension. Read together, the applications and affidavits (which contain much of the same information, gleaned from the wiretap originally approved by Chief Judge Finesilver) support the conclusion that the Mills and others were using *both* telephones to conduct their drug transactions and that the full reach of the conspiracy would be disclosed only by both wiretaps. The Government's failure to comply with section 2518(1)(e) does not merit suppression on these facts.

### VII. Conclusion

Based upon the foregoing findings and conclusions, it is therefore

ORDERED that all defendants' motions to suppress intercepted communications are denied.